TIMOTHY G. WRIGHT & another vs. HORACE A. LOTHROP.
TIMOTHY G. WRIGHT vs. SAME.

Suffolk.   January 9, 1889. — June 20, 1889.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Breach of Contract — Legislative Committee — Witness — Slander —
Privileged Communication.*

The owner of a building, after its burning and pending an action by him against a
tenant at will to recover therefor in which an averment of wilful burning was
negatived by a jury, who found the tenant negligent only, agreed to settle with
the tenant upon his agreeing to prosecute the collection of his insurance money,
and to pay over a portion of it to the owner, who agreed on his part not to
"obstruct the collection of said claims." Thereafter the owner voluntarily
appeared before a committee of the Legislature, to which an order, introduced
at his suggestion, making tenants at will liable for damages from fire caused
by their carelessness, had been referred, and stated that his tenant had wilfully
burned his building, or that he thought he had, though he could not prove it;
whereupon the tenant, because of such statement, settled with the insurance
companies, which knew of the owner's original charge but did not appear to
have heard of the latter statement, for less than the amount claimed. *Held,*
that the owner's statement before the committee was not such an obstruction
of the collection of the claim as to constitute a breach of the agreement.
Whether the statement before such committee was a privileged communication, as
made by the owner in good faith and without malice, was *held* to be a question
for the jury.

TWO ACTIONS, the first an action of contract for the breach
of a written agreement, and the second an action of tort for
slander. The cases were tried together in the Superior Court,
before *Mason*, J., who ruled that the actions upon the facts in
evidence could not be maintained, and directed a verdict in each
case for the defendant; and the plaintiffs alleged exceptions.
The material facts appear in the opinion.

*R. M. Morse, Jr.*, for the plaintiffs.

*A. Churchill & G. O. Shattuck*, (*J. R. Churchill* with them,)
for the defendant.

FIELD, J. The first of these actions is an action of contract
on a written agreement under seal entered into by Wright and
Thayer, the plaintiffs, party of the first part, and by Lothrop,
the defendant, party of the second part. This agreement recites

that Lothrop had brought an action against Wright and Thayer to recover the value of a building and of certain personal property " alleged to have been burned through the wilful and negligent acts of the defendants " in that suit; that the jury had found a verdict for Lothrop, on the ground that the property had been burned " by the negligence, but not by the wilful acts, of said Wright and Thayer"; that this court had ordered a new trial of the action; that Lothrop had also brought another action against Wright and Thayer for rent of said building, and for other causes; that both of these actions were pending; and that the parties had agreed to settle all their claims and causes of action between themselves. Therefore, it is agreed "that in both of said actions judgment shall be entered for the defendants without costs"; that Wright and Thayer shall jointly and severally prosecute their suits on certain policies of insurance which they had upon the property destroyed, and shall not compromise these suits or discharge their claims upon the insurance companies without the approval of Lothrop or of his attorney, Mr. Churchill; that they shall pay out of the proceeds of said suits to Lothrop thirty-five hundred dollars, and in addition thereto one fourth part of all that may be recovered in said suits beyond the sum of fourteen thousand dollars, and the counsel fees in the suits; that for the purpose of securing to Lothrop the payment of these amounts Wright and Thayer hereby assign to Churchill, as trustee, their claims against the insurance companies; and that the parties mutually release each other from all claims and causes of action except such as may arise from the agreement.

The fourth paragraph of the agreement is as follows: " That said Lothrop will do nothing to obstruct the collection of said claims of said Wright and Thayer against said insurance companies, and will aid said Wright and Thayer in the same by giving them all the information, evidence, and suggestions in his power or possession which they may deem useful and may request him to give; and that said Lothrop will further, in the same manner, aid said Wright and Thayer at their request in the compromise of said claims so far as he may be able so to do." No evidence appears in the exceptions that Lothrop was ever requested by Wright and Thayer to give any information, or

to aid them in any manner, and Wright testified " that Lothrop was never called on to help or in any way render assistance under the contract." There was, therefore, no evidence of any breach of the last clauses of this paragraph. The plaintiff contends that there was evidence that Lothrop had broken his covenant to " do nothing to obstruct the collection of said claims."

It appeared that an order had been introduced, at the suggestion of Lothrop, in the House of Representatives of the Commonwealth, " that the Committee on Insurance consider the expediency of such legislation as will make ' tenants at will ' liable for damages from fire caused by their carelessness"; that this order had been ultimately referred to the Committee on the Judiciary; and that after the order was referred to this committee, Lothrop appeared before the committee and called its attention to the report of the case of *Lothrop* v. *Thayer*, in 138 Mass. 466, which had then been published, and was the report of the decision by this court of the action he had brought against Thayer and Wright for the burning of his property. Lothrop desired the committee to report a bill making tenants at will liable for the negligent burning of property in their possession, and, while advocating this before the committee, he explained the action which he had brought and the decision of the court, and said to different members of the committee that the tenants, meaning the plaintiffs, had wilfully burned his building, or that he thought they had, although he could not prove it. There is some evidence that he said this without having been specifically asked a question upon this subject by the committee, and that the committee room was open to the public at the time. There was also evidence that Wright and Thayer, on hearing that Lothrop had made this statement before the committee, authorized a settlement of the insurance cases for twelve thousand dollars, which was the amount insured by the policies, excluding interest, which then amounted to between four and five thousand dollars. This settlement was made with the approval of Mr. Churchill. It is not denied that the insurance companies knew that Lothrop in his action originally charged Wright and Thayer with wilfully burning his property; that this had been one of the issues in the trial of the cause; and that evidence had been introduced to support it. Indeed,

Wright testified " that the insurance companies knew the charge had been publicly made at said trial," and " that the insurance companies knew all that had been testified to at the trial." The plaintiffs complain that the statement of Lothrop before the committee revived an old slander, and they say that, fearing the effects of it, they made a settlement for a less sum than otherwise they would have obtained.

The question is whether making this statement before the committee was, under the circumstances, a breach by Lothrop of his covenant to " do nothing to obstruct the collection of said claims." It certainly was not a direct interference with the prosecution of the suits, or with the negotiations between the parties to the suits. There is no evidence that Lothrop in making this statement, or in advocating the proposed legislation, had any intention of obstructing the collection of the claims, unless this can be inferred from the facts which have been recited, and knowing as he did that the insurance companies knew that he had brought an action against Wright and Thayer in which he charged them with intentionally burning his property, and that he had at the trial introduced evidence to sustain this charge, we think that he could not have reasonably anticipated that his statement before the committee would have the effect of obstructing the collection of the claims. He had an interest in not obstructing the collection of the claims, and the only reasonable inference is, that Lothrop appeared before the committee for another purpose than that of obstructing the collection of the claims.

There is no evidence that the statement of Lothrop before the committee had actually the effect of obstructing the collection of the claims. We doubt even if the evidence recited in the exceptions would have warranted the jury in finding that the insurance companies knew of the statement made before the committee. There was evidence that the statement was " put in the papers," but in what papers does not appear, and it does not appear that the insurance companies or their agents were subscribers to these papers, or that they saw them, or that the papers circulated in the places where the insurance companies or their agents did business. The covenant is undoubtedly somewhat indefinite in meaning, but we think it would be an

unwarrantable construction of it to extend it to statements made to persons who were strangers to the suits, which could not reasonably be expected to have the effect of obstructing the collection of the claims, and which were not shown to have had any influence upon the insurance companies.

In the first case the court rightly ordered a verdict for the defendants, and the exceptions must be overruled.

The second of these actions is an action of tort, brought by Wright against Lothrop, for slander, in making the statement concerning the burning of his property which has been recited. The answer sets up, among other things, that the statement was a privileged communication made to a committee of the Legislature upon a subject then under consideration by the committee, and concerning which the committee had a duty to perform, and that the statement was made without malice and under the belief that it was true, and that this was a reasonable belief. The privilege of a witness appearing before a committee of the Legislature, in a matter within the jurisdiction of the committee, is undoubtedly the same as that of a witness in proceedings before a court of justice.

The examination of witnesses is regulated by the tribunal before which they testify, and if witnesses answer pertinently questions asked them by counsel which are not excluded by the tribunal, or answer pertinently questions asked them by the tribunal, they ought to be absolutely protected. It is not the duty of a witness to decide for himself whether the questions asked him under the direction of the tribunal are relevant. As the witness is sworn to tell the whole truth relating to the matter concerning which his testimony is taken, he ought also to be absolutely protected in testifying to any matter which is relevant to the inquiry, or which he reasonably believes to be relevant to it. But a witness ought not to be permitted with impunity to volunteer defamatory statements which are irrelevant to the matter of inquiry, and which he does not believe to be relevant. This statement of the law, we think, is supported by the decisions in this Commonwealth. The English decisions, perhaps, go somewhat further than this in favor of a witness; certainly they apply the rule liberally for his protection. *Marsh* v. *Ellsworth*, 50 N. Y. 309. *White* v. *Carroll*, 42 N. Y. 161.

*Calkins* v. *Sumner*, 13 Wis. 193. *McLaughlin* v. *Cowley*, 127 Mass. 316. *Gott* v. *Pulsifer*, 122 Mass. 235. *Rice* v. *Coolidge*, 121 Mass. 393. *Atwill* v. *Mackintosh*, 120 Mass. 177. *Brow* v. *Hathaway*, 13 Allen, 239. *Kidder* v. *Parkhurst*, 3 Allen, 393. *Gassett* v. *Gilbert*, 6 Gray, 94. *York* v. *Pease*, 2 Gray, 282. *Hoar* v. *Wood*, 3 Met. 193. *Bradley* v. *Heath*, 12 Pick. 163, 165. *Seaman* v. *Netherclift*, 2 C. P. D. 53. *Munster* v. *Lamb*, 11 Q. B. D. 588. *Goffin* v. *Donnelly*, 6 Q. B. D. 307. *Dawkins* v. *Rokeby*, L. R. 7 H. L. 744. Odgers, Libel and Slander, 191. Townshend, Slander and Libel, § 223.

If, then, the statement of Lothrop to the committee be regarded as the pertinent answer of a witness to questions put to him by members of the committee, the action cannot be maintained. Lothrop may have been treated as a witness by the committee, although he was not sworn. There was some evidence, however, as we construe the exceptions, that the defendant was not a witness, and was not so considered or treated by the committee, but that he appeared before the committee voluntarily to call attention to the state of the law on the subject of the liability of tenants at will for the negligent burning of buildings in their possession, and to urge the committee to report a bill changing the law, and that he made the statement without being asked a question upon the subject.

The defendant had the interest which all citizens have in procuring wise legislation, and his attention had been particularly called to what he may have deemed a defect in the law. In asking Mr. Boyden, a member of the House of Representatives, to introduce the order, and in appearing before the committee to which the order had been referred, it must be considered that he was acting in a matter which legitimately concerned him, and was making communications to persons who had authority to deal with the subject, and that such communications are privileged if they are made in good faith and without malice. The privilege is conditional, not absolute. If the defendant stated before the committee that the plaintiff wilfully burned his building, and this statement was not made in answer to any question put to him by the committee while having under consideration the order referred to them, we think it was a question for the jury whether the defendant was acting in good faith

and without malice, and, as pertinent to this question, it is to be considered whether the statement in the circumstances under which it was made was properly relevant to the inquiry and discussion before the committee. *Gott* v. *Pulsifer*, 122 Mass. 235. *Atwill* v. *Mackintosh*, 120 Mass. 177. *Gassett* v. *Gilbert*, 6 Gray, 94.

In the second case the exceptions must be sustained.

*Ordered accordingly.*